## In re GLOBE BUILDING MATERIALS, INC., Debtor.

Gordon E. Gouveia, Trustee, Plaintiff,

v.

State of Wisconsin and Peggy A. Lautenschlager, not individually, but solely in her capacity as Attorney General of the State of Wisconsin, Defendants.

Bankruptcy No. 01–60182 JPK. Adversary No. 03–6082.

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Sept. 13, 2004.

Richard E. Braun, Esq., Assistant Attorney General for Wisconsin Department of Justice, Madison, WI, for Defendants.

Janice A. Alwin, Esq., Shaw Gussis Fishman Glantz Wolfson & Towbin, LLC, Geneva, IL, for Trustee/Plaintiff.

## MEMORANDUM OF DECISION

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This adversary proceeding was initiated by complaint of Gordon E. Gouveia, Chapter 7 Trustee of Globe Building Materials, Inc. ("Trustee") filed on January 17, 2003. The designated defendants—State of Wisconsin ("Wisconsin") and Peggy A. Lautenschlager, in her official capacity as Attorney General of the State of Wisconsin ("Attorney General")—filed their answer to the complaint on February 19, 2003.[1]

---

1. The parties have not clarified the status of the Attorney General as a necessary party defendant in this case, and whether or not that officer is a necessary party is not a pertinent issue. Either the State of Wisconsin or the Attorney General—or perhaps both—is the real party-in-interest, and because both have properly been made parties, the sorting out of the actual denominated real party-in-interest in unnecessary. Throughout this

The complaint seeks to determine that a statutory lien, held by Wisconsin with respect to wage claims asserted by it on behalf of former employees of the debtor Globe Building Materials, Inc., is invalid, or may be avoided by the Trustee through the use of avoidance powers provided for by 11 U.S.C. § 545(2). Wisconsin asserts that its statutory lien is neither invalid nor avoidable.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157, and N.D.Ind. L.R. 200.1(a) of the Rules of the United States District Court for the Northern District of Indiana. This adversary proceeding is a core proceeding within the meaning of one or more subsections of 28 U.S.C. § 157(b)(2), particularly § 157(b)(2)(K).

## I.  *Procedural Posture*

Following the closure of the pleadings, on April 25, 2003, Wisconsin filed its Defendants' Motion to Stay Adversary Proceeding. This motion was premised upon Wisconsin's assertion that the decision of the United States Court of Appeals for the Seventh Circuit in *In re AR Accessories Group, Incorporated,* 345 F.3d 454 (7th Cir.2003) had resolved at least one of the two legal issues before the Court in this case. In order to allow for the contingencies of re-hearing en banc and certiorari to the United States Supreme Court, the Court withheld establishing a briefing schedule until the status of those contingencies had been clarified. When it became clear that the Seventh Circuit's decision in *In re AR Accessories Group, Incorporated* had essentially become final, the Court entered an order on December 15, 2003 which established the further course of proceedings. Pursuant to that order, the Trustee filed a motion for sum-

mary judgment on February 2, 2004; the parties filed their Joint Stipulation of Material Facts in Connection With Parties' Cross Motions for Summary Judgment on March 5, 2004; and Wisconsin filed its motion for summary judgment on April 5, 2004. The Trustee filed his initial brief in support of his motion for summary judgment on March 5, 2004; Wisconsin filed its brief in support of its motion for summary judgment, and in opposition to the Trustee's motion, on April 8, 2004; and the Trustee filed his reply memorandum on April 30, 2004.

This adversary proceeding is thus before the Court on the cross-motions for summary judgment filed by the Trustee and Wisconsin.

## II.  *Issue Before the Court*

The Trustee's complaint states two grounds for his position that Wisconsin's asserted statutory lien is invalid: (1) that actions taken to perfect the lien violated the automatic stay of 11 U.S.C. § 362(a) and therefore render the lien void, and (2) that the lien is avoidable pursuant to 11 U.S.C. § 545(2).

As correctly conceded in the second paragraph in Section I on page 2 of the Trustee's initial memorandum, the decision of the Seventh Circuit Court of Appeals in *In re AR Accessories Group, Incorporated, supra,* determined that the Wisconsin wage lien statute is within the provisions of 11 U.S.C. § 362(b)(3), and thus that the perfection of the statutory lien by actions taken subsequent to the initiation of a Chapter 7 bankruptcy case does not violate the automatic stay of 11 U.S.C. § 362(a).

The Trustee asserts that the issue relating to avoidance of the lien pursuant to 11 U.S.C. § 545(2) remains viable after the

Memorandum of Decision, the Court will jointly refer to the State of Wisconsin and the Attorney General in her official capacity as "Wisconsin".

Seventh Circuit's decision in *AR Accessories Group, Incorporated.* Wisconsin asserts that this decision also controls the issue of avoidance under § 545(2), and thus that it is entitled to summary judgment on this issue as well.

For the reasons to be explained subsequently in this decision, the Court does not view the decision in *AR Accessories Group, Incorporated* to preclude the Trustee's contentions under 11 U.S.C. § 545(2).

### III. *Standards for Review of Motions for Summary Judgment*

The procedural mechanism of summary judgment is provided by Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by B.R. 7056. The principal standard to be followed by the Court in determining a motion for summary judgment is stated as follows in F.R.C.P. Rule 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In this case, there is no dispute as to the facts, as all material facts have been provided by the parties' stipulation. The issues before the Court are thus purely questions of law.

### IV. *Materials to be Considered by the Court*

Fed.R.Civ.P. 56(c) provides that the Court is to consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in determining whether or not a genuine issue/genuine issues of material fact exist.

The record for the purposes of the parties' cross-motions for summary judgment is provided by the stipulation of material facts filed on March 5, 2004.

The material facts are the following:

1. Globe Building Materials, Inc. ("Globe") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 11, 2001.

2. On April 4, 2001, Globe's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code.

3. Throughout the pendency of Globe's Chapter 7 case, Gordon E. Gouveia has been the duly appointed and acting Chapter 7 Trustee of Globe's Chapter 7 bankruptcy estate.

4. On or about July 25, 2001, Wisconsin filed a proof of claim in this case which asserts a secured claim against Globe's estate in connection with the statutory lien which is the subject of the Trustee's action for avoidance under 11 U.S.C. § 545(2).

5. On the date on which its Chapter 11 bankruptcy case was filed, Globe's business consisted of the manufacture, sale and distribution of residential roofing materials. These activities were carried out in three manufacturing facilities, including one located in Cornell, Wisconsin.

6. On or about July 24, 2001, Wisconsin filed a Notice of Lien with the State of Wisconsin Department of Financial Institutions and the Office of the Chippewa Wisconsin County Clerk. In its Notice of Lien, Wisconsin asserted a wage lien pursuant to Wis. Stat. § 109.09(2) against all real and personal property then-owned or thereafter acquired by Globe in the State of Wisconsin. This Notice of Lien was amended on February 22, 2002.

7. By filing of the Notice of Lien, Wisconsin asserted its statutory lien on all property of Globe that was located in Wisconsin.

8. On or about February 22, 2002, the Court approved the Trustee's sale of Globe's Cornell, Wisconsin manufacturing facility. The net proceeds of sale were paid to the Trustee, and on the basis of its asserted statutory lien, Wisconsin asserts a first priority lien on the net sales proceeds generated from that sale.

## V. *Legal Analysis*

Given the parties' acknowledgment that the issue of invalidity of Wisconsin's lien due to violation of the automatic stay is no longer viable, the remaining issue to be determined in this case is whether the Trustee can avoid the lien under 11 U.S.C. § 545(2).

It is first necessary to address Wisconsin's contention that the issue of avoidance of its statutory lien under 11 U.S.C. § 545(2) has been determined by the Seventh Circuit Court of Appeals' decision in *In re AR Accessories Group, Incorporated, supra.* (hereinafter: *"AR Accessories"*). In that case, Bank One, NA [as agent for the debtor's three prepetition lenders, who asserted secured claims with respect to the property of the estate] and Scott Peltz, which the decision describes as "the named trustee of the AR Accessories Group, Inc. Liquidating Trust, successor-in-interest to Debtor in these proceedings" [who was appointed in order to administer the debtor's confirmed plan of liquidation]—asserted that actions taken post-petition by Wisconsin to perfect its statutory lien violated the automatic stay of 11 U.S.C. § 362(a), thus precluding Wisconsin from having a valid lien on the debtor's property because under Wisconsin law the lien did not "re-

late back" to create a date of perfection prior to the filing of the debtor's petition in the manner required by 11 U.S.C. § 362(b)(3). Alternatively, these parties argued that even if the § 362(b)(3) exception did not require "relation back", Wisconsin's interest in property of the estate under the wage lien statute arose only when Wisconsin filed its notice of lien, and thus Wisconsin had no interest in the debtor's property when the bankruptcy petition was filed.[2] Wisconsin argued that its wage lien statute fit within the exception to the automatic stay provided by 11 U.S.C. § 362(b)(3) and § 546(b)(1)(A), because the statute by which the lien was established provided that the lien took priority over all other interests, regardless of whether those competing interests were perfected prior to or after the creation of the wage lien.[3]

Wisconsin stated the issue on appeal to be "[Whether] for a statute to allow perfection of an interest after the filing of a bankruptcy petition under 11 U.S.C. § 546(b)(1)(A), the statute must not only have the effect of giving the interest priority over earlier-acquired interests, but must also contain specific 'relation-back' language."[4] Bank One and Peltz stated two issues presented by the appeal:

1. Whether subsection 546(b)(1)(A) of the Code applies only to liens that "relate back" in time so as to have an effective date that is earlier than the date the lien is perfected.

2. Whether the Department (Wisconsin) had an "interest in property" as of the commencement of the Debtor's

**2.** *See,* Brief of Plaintiffs–Appellees, "Summary of Argument", accessible through Westmate/Westcheck.

**3.** *See,* Brief of Appellant, "Summary of Argument", accessible through Westmate/Westcheck.

**4.** *See,* Brief of Appellant, "Statement of the Issues on Appeal", accessible through Westmate/Westcheck.

bankruptcy case sufficient to satisfy section 362(b)(3) of the Code.[5]

The Seventh Circuit stated that Bank One and Peltz "alleged, inter alia, that the Department's wage lien violated (the automatic stay) ... (and) that the wage lien was void *ab initio* because it was created after Debtor filed its petition for bankruptcy,"—*AR Accessories Group Incorporated*, 345 F.3d 454, 456—and that "(the) Department responded that the wage lien fit within an exception to the automatic stay provision that makes the stay inapplicable [11 U.S.C. § 362(b)(3)]." *AR Accessories Group Incorporated*, 345 F.3d 454, 456. As phrased by the Seventh Circuit:

Because the Wisconsin statute was a generally applicable law [under 11 U.S.C. § 546(b)(1)(A)], the Department maintained, it created and perfected a valid lien having superpriority over the interests of Bank One and other creditors pursuant to the Bankruptcy Code's exception to the automatic stay provision [§ 362(b)(3) ].

In reply, Appellees argued that the Wisconsin statute did not trigger the exception provision because it contained no language expressly providing for retroactive perfection (thereby relating the lien interest back to a prepetition date), as required under 11 U.S.C. §§ 362(b)(3) & 546(b)(1)(A). 345 F.3d 454, 457

The Court stated the issue subject to its review as follows:

Whether 11 U.S.C. § 546(b)(1)(A) requires the Wisconsin statute to provide expressly for retroactive perfection of the lien interest turns on a construction of the following language:

The rights and powers of a trustee ... are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection. 345 F.3d 454, 457–458

The Seventh Circuit's determination of this issue is stated as follows:

Accordingly, we hold that a priming statute need not contain language expressly providing for retroactive perfection in order to trigger the exception provided in 11 U.S.C. § 546(b)(1)(A) to the automatic stay of postpetition efforts to perfect a property interest. The Wisconsin statute therefore fits within the automatic stay exception, and the Department's lien does not violate the automatic stay provision. 345 F.3d 454, 458

Finally, the Court of Appeals addressed the appellees' argument that under the statute by which the statutory wage lien was created, Wisconsin had no interest in unpaid wages of the debtor's employees until the notice of lien provided for by the statute was actually filed and served. The Court determined that this was an improper construction of the statute, and that the statutory wage lien statute provides that the effective date of the wage lien interest is the time that the last unpaid services were performed, rather than the date upon which the Notice of Lien is filed.

There is nothing in *AR Accessories* which touches upon the viability of the wage lien in the face of the exercise of a trustee's avoidance power under 11 U.S.C. § 545(2). Careful analysis of the issues raised and addressed in *AR Accessories* establishes that the sole basis of avoidance of Wisconsin's statutory lien advanced by Bank One and Peltz was that the act of creating the lien violated the automatic stay, and that the lien was therefore void. There was no assertion by either Bank One or Peltz that the wage lien could be

---

**5.** *See*, Brief of Plaintiffs–Appellees, "Issues Presented", accessible through West-mate/Westcheck.

avoided under either section 544 or 545, and the Seventh Circuit did not address any issue under either section: no reference to either statute even appears in the decision. More critically, there is no recitation of which of the "rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to [the wage lien as a] generally applicable law that ... permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection", as must be determined in order for 11 U.S.C. § 546(b)(1)(A) to provide the predicate necessary for the application of 11 U.S.C. § 362(b)(3). As phrased by the parties and addressed by the Court of Appeals, the sole issue determined in *AR Accessories* is that the Wisconsin wage lien statute permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection, and that Wisconsin's act of perfecting its lien post-petition did not violate the automatic by operation of § 362(b)(3)/ § 546(b)(1)(A). This result hinged on relating the lien back to a prepetition point, which the Court accomplished by construing the statute to not require an express relation-back provision to give the lien a retroactive effect under applicable law.

■ It seems to this Court that the Seventh Circuit assumed from the parties' framing of the issues that at least one of the "rights and powers of a trustee under sections 544, 545 and 549 ... [would be] subject to" defeat/subordination by operation of the Wisconsin wage lien statute if it were given the retroactive effect which it was determined to have. Put another way, if *none* of the trustee's avoiding powers under §§ 544, 545 and 549 could be defeated by the wage lien statute, then clearly the statute would not be within the parameters of §§ 362(b)(3) and 546(b)(1)(A). Despite any lack of discussion in *AR Accessories*, it is clear that the

retroactive perfection effect given to the statute does cause the wage lien to trump certain of the Trustee's avoidance powers. The avoiding powers referenced in 11 U.S.C. § 546(b)(1) include the powers derived by a Chapter 7 trustee from the three statuses provided to the trustee by § 544(a). Subsection (1) of that statute clothes the trustee with the status of "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains [at that time and with respect to such credit] a judicial lien ..." Subsection (2) of § 544 gives the trustee the status of "a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains [at that time and with respect to such credit] an execution against the debtor that is returned unsatisfied [at that time]". Wis. Stat. § 109.09(2)(c) provides that:

(c) A lien under par. (a) takes precedence over all other debts, *judgments, decrees, liens* or mortgages against the employer, except a lien of a financial institution, as defined in s. 69.30(1)(b), that originates before the lien under par. (a) takes effect or a lien under s. 292.31(8)(I) or 292.81. [emphasis supplied]

Thus, the wage lien statute itself provides that the rights of a creditor holding a judicial lien [§ 544(a)(1)] and the rights of a creditor holding an unsatisfied execution [§ 544(a)(2)] are subordinate to the statutory wage lien even if the rights of those creditors arise before the lien even takes effect. Thus, a Chapter 7 trustee's avoidance powers under § 544(a)(1) and (2) cannot be used to defeat the statutory lien. As a result, the rights and powers of a Chapter 7 trustee under § 544(a)(1) and (2) are subject to the wage lien statute because that statute "permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfec-

tion". *In order to fall within the exception of 11 U.S.C. § 362(b)(3), it is not necessary that **every** power of a trustee under §§ 544, 545 and 549 be subject to defeat by the interest sought to be made subject to § 362(b)(3). The issue under this statute is whether "any act to perfect, or to maintain or continue the perfection of, an interest in property" violates the automatic stay. If the act of perfection will "trump" **even one** of a trustee's avoiding powers, it does not violate the automatic stay to undertake the actions necessary for perfection.* That is as far as *AR Accessories* goes; the case did not in any manner reach the issue of whether the wage lien falls within 11 U.S.C. § 546(b)(1)(A) with reference to the bona fide purchaser status of a trustee under 11 U.S.C. § 545(2).

In order to determine whether or not a particular avoiding power is affected or precluded by the act of retroactive perfection, the relative priorities provided by applicable law to a statutory lien interest must be measured against the trustee's avoidance power. The power at issue in this case is 11 U.S.C. § 545(2), which states:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of commencement of the case, whether or not such a purchaser exists

■ As correctly noted by the Trustee's initial memorandum, the issue of whether or not the trustee's status as a bona fide purchaser can defeat a statutory lien pursuant to the provisions of 11 U.S.C. § 545(2) is governed by applicable state law; *In re S.N.A. Nut Company,* 197 B.R. 642, 649 (Bankr.N.D.Ill.1996); *In re Phillips Construction Co.,* 579 F.2d 431, 432 (7th Cir.1978) [which although decided under the Bankruptcy Act remains valid with respect to this issue under the Bankruptcy Code]. Obviously, the applicable law is that of the State of Wisconsin.

The Court has been unable to locate any case decided by a court of Wisconsin which addresses the relative priorities of a bona fide purchaser in relation to the statutory wage lien under Wis. Stat. § 109.09. In a perfect world, because the issue before this Court is so dependent upon state law, this issue would be the subject of a certification to the Wisconsin Supreme Court. Unfortunately, pursuant to Wis. Stat. § 821.01, only "the supreme court of the United States, a court of appeals of the United States or the highest appellate court of any other state" may request review by the Wisconsin Supreme Court of an issue of state law. Thus, neither this Court, nor even the United States District Court for the Northern District of Indiana, can certify the pertinent issue in this case and thus request determination of that issue by the Supreme Court of Wisconsin.

So, this is an imperfect world. This Court is left to its own devices to determine this issue of Wisconsin law.

■ Wis. Stat. § 109.09 does not specifically address the rights of a bona fide purchaser in relation to a statutory wage lien arising under that statute. Rather, § 109.09 specifically provides priority for the wage lien over only "all other debts, judgments, decrees, liens or mortgages against the employer, except a lien of a financial institution ..." As noted in *Pfister v. Milwaukee Economic Development Corporation,* 216 Wis.2d 243, 576 N.W.2d 554, 556 (Wis.App.1998) [construing a prior, but similar, superpriority version of the statute]:

> We conclude that the trial court correctly determined that §§ 109.03(5) and 109.09(2), Stats., as amended, do estab-

lish that an employee's wage claim lien has priority over all other liens (except those explicitly excluded by statute), including pre-existing ones.

■ Because the wage lien statute specifically delineates the types of interests which are subordinate to the lien and does not designate a "bona fide purchaser" as having an interest subordinate to the lien, it can be very persuasively argued under the statutory construction principle of *expressio unius est exclusio alterius* that a bona fide purchaser who purchases property subject to the lien prior to the date of recording of the lien will not be subordinated to the claims which are subject to the lien. This doctrine—providing in this context that the exclusion of bona fide purchasers from the list of property interests subordinate to the wage lien implies that the Wisconsin legislature intended to exclude BFPs from subordinate status—"is based upon logic and the working of the human mind;" *Columbia Hospital Association v. City of Milwaukee,* 35 Wis.2d 660, 669 151 N.W.2d 750, 754 (1967). However, in applying the doctrine, "(f)actually, there should be some evidence the legislature intended its application lest it prevail as a rule of construction despite the reason for and the spirit of the enactment;" *ibid.* Fortunately, there is such evidence. Chapter 109 of the Wisconsin statutes was enacted in 1975. Several decisions held that the wage lien did not take precedence over secured creditors who had perfected their interests prior to the date the lien arose, *See, In re Napco Graphic Arts, Inc.,* 83 B.R. 558 (E.D.Wis.1988). In 1998, the Court of Appeals held that the wage lien was entitled to superpriority status; *Pfister v. Milwaukee Economic Development Corporation,* Wis.App., 216 Wis.2d 243,

576 N.W.2d 554 (1998). Approximately 6 months after this decision, the Wisconsin legislature amended section 109.09(2) to override the superpriority status granted to the lien by *Pfister,* and then in 1999 amended the law again to reestablish the superpriority status of the wage lien over other interests in property as designated in the statute, with the exception of a carve out priority for certain liens of financial institutions.[6] This constant tinkering with the relative priorities accorded to the wage lien, without any inclusion of the class of bona fide purchasers as a designated category of property interest holder subject to the statute, provides evidence sufficient to apply the doctrine of *expressio unius est exclusio alterius* to the construction of § 109.09(c). Thus, the interests of bona fide purchasers who become such before the recording of the wage lien are not subordinate to the wage lien, by express operation of § 109.09.[7]

The Trustee contends that this result is dictated by Wis. Stat. § 706.08(1)(a), which states the following:

(1)(a) Except for patents issued by the United States or this state, or by the proper officers of either, every conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first.

In the Court's view, this statute provides protection to a bona fide purchaser only in the context of an unrecorded "conveyance". Wis. Stat. § 706.01 states that for the purposes of § 706.08, the term " '(c)onveyance' means a written instrument, evi-

---

6. The Court's recitation of statutory history is derived from footnote 5 in the Plaintiffs'-Appellees' Brief as filed in the Seventh Circuit in *AR Accessories Group, Inc., supra.*

7. Of course, after the lien has been recorded, there cannot be a bona fide purchaser due to the constructive notice provided by recordation.

dencing a transaction governed by this chapter, that satisfies the requirements of s. 706.02". Section 706.02 relates solely to voluntary transactions by which one party "conveys" an interest in property to another: clearly, the statutory wage lien provided by § 109.09 is not a "conveyance", and thus the provisions of § 706.08(1)(a) have no applicability to any issue before the Court.

In the Court's view, Wis. Stat. § 706.09 is relevant to the issue in this case; that statute in pertinent part states:

(1) When conveyance is free of prior adverse claim. A purchaser for a valuable consideration, without notice as defined in sub. (2), and the purchaser's successors in interest, shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:

. . .

(b) *Conveyance outside chain of title not identified by definite reference.* *Any* conveyance, *transaction or event* not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain . . . .
(emphasis supplied)

Under this statute, the non-payment of wages by an employer which gives rise to the statutory wage lien may be construed as a "transaction or event", and until the notice of lien provided by Wis. Stat. § 109.09(2)(b) is recorded, that "transaction or event" does not appear of record, and interests under an unrecorded wage lien cannot defeat a person having the status of a bona fide purchaser. While not as clear a path as one might like with respect to the status of the statutory wage lien vis-a-vis the interests of a bona fide

purchaser, at minimum Wis. Stat. § 706.09 does establish the super-priority status which the State of Wisconsin has imparted to a person or entity having the status of a bona fide purchaser in relation to a number of other interests which may exist with respect to a subject property.

An additional consideration is one of bearing of loss. In a circumstance in which an entity having unpaid employees transfers property to a bona fide purchaser prior to the recording of the notice of the statutory wage lien, does the "loss" with respect to the amount of unpaid wages fall upon the employees or upon the bona fide purchaser? It must be recalled that the trustee's status under § 545(2) [and under § 544(a)(3), for that matter] is that of a true "bona fide purchaser", which means a person or entity who pays a valuable consideration for the transfer of property, without *actual, constructive or inquiry notice* with respect to any potential adverse interest in the subject property. In many instances, analysis of the party to whom the risk of loss will be allocated in circumstances such as these, is focused upon which party had the most realistic opportunity to avoid the loss. In this context, it is clearly the employees, and not the bona fide purchaser, who can exercise control over avoidance or limitation of loss. Although perhaps not a tremendously effective device, employees can limit the work which they perform for which they are unpaid. An unpaid employee has a direct right of action against his/her employer pursuant to Wis. Stat. § 109.03(5), and has the right to record a notice of lien pursuant to Wis. Stat. § 109.09(2)(b). Until the notice of lien is filed, there is very little that a purchaser can do to determine whether or not the "secret lien" of § 109.09 has arisen, and even if there were, the trustee's status under 11 U.S.C. § 545(2) assumes that the hypothetical bona fide purchaser has done anything and everything which the law requires to ob-

tain notice or knowledge of a particular circumstance or claim which may effect the property subject to the transaction in which the bona fide purchaser is engaged.

Thus, to the extent that the potential for loss prevention factors into analysis, it is the bona fide purchaser who is the more worthy of protection.

The Court has conducted extensive research to seek to locate cases decided under Wisconsin law which address the protected status afforded to bona fide purchasers. As might be expected, nearly all of the decisions located by the Court relate to whether or not the circumstances addressed establish or defeat the status of a bona fide purchaser under statutes which clearly provide for the protection of that class of interest. There is one case—decided long ago which illustrates the protections generally afforded by the State of Wisconsin courts to one having the status of a bona fide purchaser, in relation to the construction of a statute which did not address the relative priorities of such a purchaser and of a claimant under the statute. In *Smith v. Shell Lake Lumber Co.*, 68 Wis. 89, 31 N.W. 694 (1887), the Wisconsin Supreme Court had before it a case in which a laborer had performed work on a quantity of pine logs, by hewing the logs into a large lot of shingles. This individual was not paid for his labor by the owner of the logs. Under a statute—apparently essentially a mechanic's lien statute—which provided the person performing the labor on the logs with a lien on the shingles thereby produced from the date of the performance of the labor for which he was not compensated, and in addition provided for the filing of a

notice of that lien in a recording index, the Wisconsin Supreme Court held that the sale of the shingles to a bona fide purchaser prior to the recording of the notice of lien resulted in the bona fide purchaser's interests being paramount to those of the unpaid claimant. Thus, there is some precedent in the State of Wisconsin—albeit speaking from the depths of the forest of time—that establishes the special position of a bona fide purchaser in relation to the interests of persons protected by a statutory lien when a notice of that lien has not been recorded prior to the bona fide purchaser's acquisition of interests in property subject to the lien.

Based upon the foregoing analysis, the Court holds that under the stipulated facts in this case, the statutory lien of the State of Wisconsin on the net proceeds of sale of property of Globe Building Materials, Inc. in the State of Wisconsin is avoidable by the Chapter 7 Trustee by utilization of the provisions of 11 U.S.C. § 545(2): the statutory lien was not effective against a bona fide purchaser until actually recorded, which act—although exempted from the automatic stay of 11 U.S.C. § 362(a) pursuant to the decision in *AR Accessories Group, Incorporated*—occurred post-petition.

The avoidance of the statutory lien of course does not affect the allowance of the State of Wisconsin's claim, apart from denying it the status of an allowed secured claim. The determination of the amount of the claim, including the allowance of any part of it as a claim entitled to priority under applicable provisions of 11 U.S.C. § 507(a), will be the subject to further proceedings in this case.[8]

8. The Trustee's complaint contains four counts. The first count proceeds on the theory that the statutory wage lien is avoidable pursuant to 11 U.S.C. § 545(2); the Court has ruled on this count in favor of the Trustee.

The second count seeks a declaratory judgment, both that actions concerning the lien constituted a violation of 11 U.S.C. § 362(a) and were thus void, and that the lien is avoidable pursuant to § 545. The § 362(a) issue

This decision is thus limited to determination of the issue of avoidance of Wisconsin's statutory wage lien pursuant to 11 U.S.C. § 545(2), and the consequent determination that the claim filed by Wisconsin on behalf of unpaid employees of Globe is not an allowed secured claim.

## VI. *Determination*

IT IS ORDERED, ADJUDGED AND DECREED that there is no genuine issue as to any material fact, and that the Trustee is entitled to summary judgment as a matter of law: the statutory lien asserted by the State of Wisconsin pursuant to Wis. Stat. § 109.09 is determined to be avoided by the Trustee pursuant to 11 U.S.C. § 545(2).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any claim filed by the State of Wisconsin with respect to unpaid wages or other compensation of employees of Globe Building Materials, Inc. shall not constitute an allowed secured claim for the purposes of distribution in the Chapter 7 case of the debtor.

was conclusively resolved by the United States Court of Appeals for the Seventh Circuit, as noted above; the § 545(2) issue has been resolved by this decision. Count III requests injunctive relief, and prior pre-hearing conferences with the parties have established that Wisconsin acknowledges that it can undertake no action to seek to collect on the lien, and thus that the request for injunctive relief is unnecessary (particularly in light of the Court's holding with respect to the allowed secured status of Wisconsin under the wage lien statute). Finally, Count IV requests the disallowance in full of Wisconsin's claim, an action which both parties have previously recognized in proceedings before the Court is not appropriate in view of the probable allowance of at least part of that claim as other than a secured claim.